# Richmond

## LEWIS CARR AND ATT CLAIBORNE, ET ALS. V. UNION CHURCH OF HOPEWELL, ET ALS.

June 9, 1947.

Record No. 3212.

Present, All the Justices.

The opinion states the case.

*Hill, Martin & Robinson,* for the appellants.

*Jones & Jones,* for the appellees.

GREGORY, J., delivered the opinion of the court.

The appellants claim to be aggrieved by two decrees of the Circuit Court of the City of Hopewell entered on the

16th day of September, 1946, in which demurrers were sustained to certain allegations of the original bill of complaint and certain allegations of the amended and supplemental bill filed in the cause, and dismissing the latter as to certain of the respondents.

On the first day of May, 1946, the Union Baptist Church of Hopewell, an unincorporated religious association, through its representatives, filed in the circuit court an application for a declaratory judgment against Lewis Carr, Att Claiborne and Walter Shands, in their own right and as the banking committee of the church, and the First Federal Savings and Loan Association of Hopewell. In the notice it was alleged that there was an actual antagonistic assertion and denial of right between the parties. The plaintiff asserted that the church had entered into a contract with one J. W. Enochs to construct a church building at a cost of some $10,000, and that this was a valid and binding contract between the church and the said Enochs. It also alleged that the banking committee of the church, composed of Carr, Claiborne and Shands, had refused to obey the orders of the church and had refused to withdraw $3,000 from the First Federal Savings and Loan Association of Hopewell and turn it over to be applied as a part payment on the construction contract. The plaintiffs further alleged that the congregation of the church had discharged the banking committee and had appointed in its place another committee composed of Walter Johnson, Walter Shands and Jessie Sessoms, and that the new committee had the right and was vested with the authority to withdraw the said $3,000 from the banking institution, and turn it over to the building contractor.

Carr and Claiborne filed an answer on their behalf in which they acquiesced in the procedure that had been adopted. They did not deny that there was an actual antagonistic controversy existing between the parties, but did deny that there was a valid contract between the church and the contractor, Enochs. They also denied that the old banking committee had been legally discharged and the new

committee legally appointed. They asserted that the new committee had no authority to withdraw the funds of the church from the bank and to pay them over to the contractor.

The matter was set for hearing on the 29th day of May, 1946, at which time all parties appeared in court in person and by counsel, and were prepared to present numerous witnesses and other evidence. However, the parties agreed that there were only two issues to be decided and that they could be rightfully decided by the church congregation. Thereupon, at the request of counsel for both sides, the court entered a consent order endorsed by them on May 29, 1946. In the order it was agreed that there should be submitted to the congregation, first, "Is it the will of the congregation of said church that the banking committee of said church shall turn over to the building committee of said church forthwith the sum of $3,000 to apply on the acquisition of land and the building of a church as is set forth in the contract between the church and the contractor, Enochs?"; and secondly, "Is it the will of the congregation of the church that Lewis Carr and Att Claiborne be replaced on the banking committee by Jessie Sessoms and Walter Johnson?"

In accordance with the agreed order the church held a meeting of the congregation at the time and place agreed upon and voted on the two questions. The result of the vote was overwhelmingly in the affirmative and the minister, in accordance with the agreement of the parties, reported to the court that the vote of the congregation was in favor of the banking committee turning over to the building committee forthwith the sum of $3,000 to be applied on the purchase of the land and the costs of the construction of the church in accordance with the contract with Enochs, and that it was also the sense of the congregation that Lewis Carr and Att Claiborne be replaced by Jessie Sessoms and Walter Johnson on the banking committee.

Thereafter the appellants filed a petition in said cause alleging that at said meeting they were not permitted to ask questions, explain their position to the other members of the

congregation, or to present their views to said congregation, and therefore the meeting had been unfairly conducted. For this alleged reason they withdrew from the meeting and refused to participate therein. The court, on June 18, 1946, denied the said petition and adjudicated that the appellants had been ousted from their office, and they were ordered to deliver to the building committee the funds.

There was no provision in the consent order of submission to the congregation for a discussion of the two issues nor for the right to question members relating thereto. The order simply authorized a vote of the congregation and a report to the court of the result. This was done.

Later the court entered its declaratory judgment in which it declared that the two issues had been resolved by the congregation and that the building contract was valid; that the $3,000 should be turned over as part payment on that contract, and that the appellants be replaced on the banking committee by Jessie Sessoms and Walter Johnson.

This final binding adjudication of right under the declaratory judgment procedure (Code, sec. 6140a) was never made the subject of a writ of error or appeal.

Subsequently the appellants filed a bill in chancery praying that the trial court set aside all of its former orders and judgments entered in the declaratory judgment proceeding, including the one to which they had consented, on the ground that the court was without jurisdiction. An injunction was requested and a temporary restraining order was entered. Later, however, the temporary restraining order was dissolved and a permanent injunction denied.

After the original bill had been filed in the cause, an amended and supplemental bill, bringing in various new parties defendant and making certain other allegations, was filed, and, as previously stated, a demurrer was sustained to substantial portions of both bills, and the amended and supplemental bill dismissed as to certain of the respondents.

There are two assignments of error. It is contended that the court erred in sustaining the demurrers of the church as heretofore indicated. It is also contended that the court

erred in not setting aside its order of June 18, 1946, in which the declaratory judgment was entered.

The appellants actively participated in the declaratory judgment proceeding and entered of record their consent thereto. The judgment of the court was pronounced on June 18, 1946, and, as stated, no appeal was applied for by the appellants. Ordinarily such a final determination of a case would be *res adjudicata* and the questions there litigated could not be again litigated. However, to escape the effect of the application of the general rule, the appellants contend that the court in the declaratory judgment proceeding was without jurisdiction, first, because an ecclesiastical matter was involved and it could not be litigated in any court, and, secondly, because only a chancery court has jurisdiction over church affairs such as those here presented, and that the election held by the church was void because it was not supervised by a chancery court.

It is, of course, elementary that if the court had no jurisdiction in the declaratory judgment proceeding its orders would be invalid. But a court has jurisdiction where it has the power to hear and determine a cause and we think it had that power in this case.

The jurisdiction and procedure for declaratory judgments is prescribed by our statutes. See Code, secs. 6140a to 6140h, inclusive (Michie, 1942). The powers of the court, the procedure, provision for a jury trial in certain cases, and the construction of the Act are all set forth in great detail. The judgments, orders, and decrees entered in the proceeding may be reviewed upon a writ of error or an appeal. It may be proceeded in either at law or in equity. These statutes are constitutional. *Patterson* v. *Patterson*, 144 Va. 113, 131 S. E. 217.

That the trial court had jurisdiction of the parties cannot be doubted or questioned. They fully submitted themselves to the jurisdiction of the court. The subject matter of the controversy was whether the banking committee should turn over to the building committee $3,000 to be used in purchasing land upon which to erect a church, and as a

part payment to the contractor for his services in that connection; and, in addition, the incidental issue of whether the appellants were to be replaced on the banking committee by other persons. It was demonstrated that these issues which constituted the subject matter could not be resolved by the members of the church or the committees without the aid of a court. In this situation the church, through its proper authorities, called upon the court to solve the problem.

The subject matter of the controversy was within the jurisdictional range of our declaratory judgment proceeding. There was a case of actual controversy. One side was claiming that the banking committee should turn over the $3,000 for a new church building while the other insisted upon retaining it. One side wanted to replace the banking committee while the other did not. These matters were within the scope of the jurisdiction of the court, and it had the power to make a binding adjudication of right concerning them. They involved only civil and property rights. Ecclesiastical beliefs, matters of church doctrine and policy and the like were entirely absent. They were not asserted in the court below and are of no moment here. The civil and property rights of religious societies may be, and are often, the subject of litigation in a court and that is all that was being done in this proceeding.

The trial court in this proceeding had as much power to conduct and supervise the election which was held by the church congregation as it would have had if the proceeding had been purely an equity proceeding. Under our statutes (6140a *et seq.*) there is no separation of law from equity. The court may enter an order, judgment or decree, and the losing party may apply for a writ of error or an appeal. The procedure may be either on the law side or the equity side. We should not be too meticulous about separating law from equity under this procedure. Even if a case has been treated as one at law when in strictness it should have been treated as in equity, or vice versa, the court, when proper and if necessary, would transfer it from one side to the other under Code, sec. 6084 (Michie, 1942).

But we do not think it was necessary in this case to transfer it to the equity side. If a case be brought properly under our declaratory judgment statute, it makes no difference on which side of the court it proceeds.

The parties are bound by the declaratory judgment entered on June 18, 1946. The subsequent bill of complaint and the amended and supplemental bill filed herein are dismissed. To this extent the decrees are modified and affirmed.

*Modified and affirmed.*